With that, we'll proceed to the next case on the argument calendar, Tohono O'odham Nation v. Department of the Interior. And before we start, I just want to clarify my understanding is the appellees are going to be splitting their time 15 minutes and then five. Those are the numbers that are going to be on the clock, 15 for the first argument, five for the second. So when the 15 is gone, your time is done. All right. So whenever the appellants are ready. Thank you, Your Honors, and may it please the court, Elizabeth Lewis for the plaintiffs. I'd like to try to reserve three minutes of my time for rebuttal. Define the NHPA's clear command to take into account the effects of its decisions on historic properties before acting. The Bureau of Land Management, BLM, instead engaged in a shell game aimed at avoiding and obfuscating its obligation under the project's Record of Decision, or ROD, and Programmatic Agreement, or PA, to consider alternatives to avoid tribal traditional cultural properties during the deferred consultation process. If allowed to stand, BLM's sleight of hand will effectively render deferred consultation a sham by insulating it from judicial review. Accordingly, this court should reverse the ruling below for two reasons. First, plaintiffs' claims were timely under the controlling corner post test because they filed within two months of the injury that gave them a complete and present cause of action. And second, although corner post controls, plaintiffs also timely challenged BLM's final decision under the NHPA, which under the plain terms of the ROD and the PA was reflected in the limited notices to proceed. And your view is the statute couldn't have started running until at least September 26th of 2023? That is correct, Your Honor. Our view is BLM actually retracted that initial LNTP for about two months and then reissued it in November. But it's not material here whether the statute started on November 27th or September 26th. That's correct, Your Honor. I want it to be clear. So in corner post, did the agency ever, this final determination, it's something about that they had determined that there were no areas of historical significance. But they had said they were going to do a second study, but they never actually did it. Is that right? Well, that is correct, Your Honor. So consultation involves a four-step process, which is the initiation of consultation, the identification of historic properties, the evaluation of adverse effects, and then the resolution of those effects by considering measures that could avoid the month. Your position, as I understand it, is you were waiting for the second study, and then this other thing shows up, which sort of summarily makes a decision, but doesn't. The second study never happened. Effectively, yes, Your Honor. Our position is that BLM did not lawfully identify the historic properties within the valley before authorizing activities that would adversely affect them. They did one study, but they were going to do one specifically looking at the… Yes, cultural landscapes, Your Honor. Right, cultural landscapes, and they didn't do that. That is correct. They made a determination in this final document. Yes, that is correct. So irrespective of whether it's in the record or not, you were telling us as an officer of the court that there never was a second study to you or your client's knowledge, and you never got one. That is correct, Your Honor. All right. Yes. Thank you. And, in fact, in plaintiff's SER, the supplemental excerpts of record, you can see, and this, I want to point out, was specifically attached to one of the declarations that defendants filed below. It was not included with their excerpts of record, but I believe it's page 57. I thought the declarations were all not relevant because we're now in a motion to dismiss. That's correct, yes. Which I should talk about them in any direction.  Yeah, okay. Correct, Your Honor. So plaintiffs, under the corner post test, the APA claim accrues only after the plaintiffs suffer that injury that is required to press their claims in court. I have a hard time understanding why you're relying on this piece rather than simply the fact that there was, since the, they had never done the national historical, the historical study, and the PA put it off until after the rod. There's just a second final judgment. And why do we have to go into this question of when the injury was? If there was a second final judgment about the actual construction, then the corner post should just matter, right? That's correct, Your Honor. Our point is, it's plaintiff's position that regardless of whether the accrual point is judged from the point of injury or this final agency action, that plaintiff's claim was timely under either test. Because as Your Honor noted, the plain language of the PA, it says on ER 103, BLM shall, if possible, avoid adverse effects to all types of historic properties. And avoidance measures may include, but are not limited to, realignment of the transmission line. And that BLM shall develop avoidance measures for any properties of traditional, religious, and cultural importance. That's all on page 103. And on page 109, that same PA says that requests for authorization of construction will be approved only if such authorizations will not restrict subsequent measures to avoid, minimize, or mitigate the adverse effects to historic properties through rerouting of the corridor. So the lower court made an error. It said that realignment was limited to kind of these fine tunings of the line. But the fact remains that all of these, this entire process, the substantive pieces of consultation under the NHPA, simply did not conclude prior to the rod. And the rod is. I thought that you were, your position is that you're not asking for abandonment of the route. Or that your case doesn't depend on that. Our case does not depend on the abandonment of the route. Of course, that would be the ideal solution to the clients. But we understand that the NHPA, it's a procedural statute. And at the end of the day, BLM did not follow the appropriate procedure as required by the PA and the rod. But you're not changing the position that you've expressed at page 14 of the reply brief. Plaintiffs have always maintained that they do not challenge the rod, BLM's NEPA process, or the terms of the PA itself, right? That's correct, Your Honor. We do not. So let me clarify one thing in your dialogue with Judge Berzon. Is it your position that there is a new final agency action with the approval of the transmission route? In the sense that it was contemplated from the beginning that this would be a later process that would end with a decision. So is it a final agency action or not? Yes, Your Honor. In this case, where, again, as the rod says on ER 167, the PA establishes the required procedures to ensure the identification of historic properties, steps to consider whether the undertaking will adversely affect such historic properties, and methods to resolve adverse effects. And it goes on to say that since a PA has been executed, the identification and evaluation process provided in the PA will be completed after the rod and right-of-way are issued, but prior to project construction. So you're, let me see if I can parse that. So when you say it is completed, that is the, excuse me, that's what you're relying on to say it's final? That's what we're relying on to say the issuance of the limited notices to proceed. Proceed is final. Yes, Your Honor, because, again, as the. You're going to start building. Yes, exactly. And this document was a document that said now you can build because we've now completed the National Historical Preservation Act study and we've concluded that there's not going to be a problem and therefore you can build. Yes, Your Honor. And all of that had to be done after the rod because that's what the PA said and that's what the rod said. That is correct, Your Honor. And, in fact, on ER 174, the LNTP specifically says, in accordance with the Section 106 PA guiding the cultural compliance activities, there are no historic properties present in the transmission structure, spans, and roads subject to this limited notice to proceed. And in your view, this was the first time that this determination had been made? Yes, Your Honor. This is the first time that this determination had been made with respect to the valley, which is the area that our clients are concerned with. I suppose we agreed with all that. If we were to agree with all that, what's gotten fairly short shrift in the briefs and in the merits of the NHPA issues, what do we do with that? Do we have to decide that this was a TCP, is that what it's called? Do we have to decide that you've demonstrated that it was, or what do we have to demonstrate? No, Your Honor. All that we are asking is that this case be remanded back to the district court to proceed on the merits. This case was dismissed before any of that was actually adjudicated. As I understand it, there were some documents like the PA and the original rod that were considered by the district court because the district court could take judicial notice of them given what your allegations were. But other than that, this was a motion to dismiss. That is correct, Your Honor. And the resolution of these factual determinations is inappropriate on that basis. I mean, but one reason all of this is in the record is because you sought a preliminary injunction, so a lot of these documents were part of the preliminary injunction record. They were part of the preliminary injunction record, and plaintiffs do not dispute that the rod. The motion to dismiss order has to be plaintiffs failed to state a claim upon which relief can be granted. They requested the court declare unlawful, vacate, and set aside the right-of-way authorization. You failed to state a claim because their challenges are untimely, I see. So that basically was the only decision you're saying. Yes, well, Your Honor. Well, the court also said it wasn't a final agency action. So it had the two grounds, untimeliness and no final agency. But those two are fairly interwoven. They are very related, Your Honor. The court also suggested that the plaintiff's complaint did not challenge the programmatic agreement. However, and for that reason, it failed to state a claim. However, I would like to direct the court to ER 83 and 90, which is plaintiff's complaint. In paragraphs 115 and 126, plaintiffs specifically alleged that the activities authorized by the limited notices to proceed adversely affected historic properties prior to the completion of the deferred consultation process required by the NHPA, its implementing regulations, and the PA. And those allegations were – But you're not challenging the PA itself. We aren't challenging the PA, Your Honor, no, but we are challenging the – Not compliance with the PA. Yes, yes, Your Honor. That's completely different, yes. Yes. And to any extent that plaintiffs' allegations in the complaint do fail to state a claim, plaintiffs are happy to go back and amend their complaint to add some of the allegations and some of the documents that were in the PI record. However, in plaintiff's view, we set forth very detailed allegations that laid out the terms of the PA. They explained that consultation was going to be deferred until after the Rod and the Rau. They explained multiple times that they had informed BLM of the importance of this specific area and of the probable existence of traditional cultural properties or TCPs in the area. And then the complaint also alleges that BLM just ignored that information and proceeded to authorize construction on the express basis that there were no historic properties in the area without completing this deferred consultation process. And then as soon as they do and plaintiffs proceed to court, they try to get our claims thrown out on statute of limitations grounds. So, you know, in effect, Your Honor, BLM created this process. It was BLM's decision to defer consultation. It didn't have to. It was BLM's decision to issue the Rod prior to concluding this process. And then when that process becomes inconvenient, they suddenly issue the decision and say that plaintiff's challenges came too late. Just to clarify, go ahead. No, I was just going to say it seems to me that setting it up the way they did makes a lot of sense because it allows for a lot of consultation and a clear process. Whether they followed it obviously is a completely different question. Correct, Your Honor. And again, we are very clear. We are not challenging the terms of that process. We are not challenging the regulations that allow for that process to proceed. We are challenging BLM's compliance with that process. Just to clarify, your position does not depend on whether, in fact, the agency was authorized under that process to change the basic route of the project? Our position does not. If the ultimate merits conclusion was that, I mean, there is one sentence in the PA that seems to say maybe it was, but the others have this language about adjustment or whatever. And if the ultimate conclusion was, well, they actually couldn't abandon the route, but they could do something or other, you'd still have a case? Yes, Your Honor. We would. Again, it is our position that the terms of the PA and the ROD are unambiguous. However, if there is any ambiguity as to the term realignment, for example. We don't need to deal with that now because it's not basic to your case. Correct. And that was going to be my point, Your Honor. That is an inappropriate issue to determine on a motion to dismiss because that would require looking to evidence outside of the contract, which would be of the benefit of the full administrative record, which would include the documents that were submitted with the PI record in addition to the full record. Yeah. And to Your Honor's point, there is, you know, one can kind of see a benefit to conducting consultation under the NHPA in this way because once the agency determines the preferred route, then it must go and submit that route to consultation under the NHPA. And that is an entirely distinct process under a distinct statute, and BLM must comply with both of those processes and procedures in order to lawfully issue a decision. And that's what the PA was designed to bind BLM to do, and that is what it failed to do in this case. Did you want to reserve the remaining time? Yes, Your Honor. I was going to say if I may reserve the remaining time. Thank you very much. Thank you. So we'll hear from Mr. Peterson first. Thank you, Your Honors. May it please the Court. My name is Ezekiel Peterson here on behalf of the Bureau of Land Management. With me at counsel table is Sven Brand-Erikson, representing the intervenors, Sunzia Transmission. My plan is to speak for 15 minutes before turning it over to Mr. Brand-Erikson. This is a case about a 500-mile transmission line that would bring renewable energy from wind farms in New Mexico to energy markets here in Arizona. Counsel, we know what it's about. Okay. And just to be frank, I find your client's position to be completely puzzling. There was a process set up that says we will make a decision about X at some unknown time in the future. And, you know, the plaintiffs are fine with that. They're happy to have that X happening in the future. And then when X happens, it's a new decision. It's not the old decision. I don't understand how you can contend that that's untimely. Your Honor, because the claims in plaintiff's complaint necessarily challenge the idea that the project was rooted through the San Pedro Valley. But even putting that aside, I mean, we agree with plaintiffs that they can challenge BLM's ongoing compliance with its own NHPA obligations. I think the parties agree with each other on that point. The issue with plaintiff's complaint is that. It's not ongoing compliance. It's a decision that was set up to happen in the PA, and then it did happen as to the construction authority. And before the construction authority was given, they had to make a conclusion about the NHPA compliance or not compliance, but what was actually being affected. And they said nothing was being affected. So they made a substantive decision at that point. And then that was the end of that decision. It wasn't ongoing anything. It was a determination that this construction can go ahead in the San Pedro Valley because we have now found that there was no impact on historical properties. Is that accurate? I think that's accurate, yes. All right. So it's nothing that needs ongoing. It's a point in time. Yes, Your Honor. And I should say probably instead of ongoing compliance, I should say post-rod compliance with the National Historic Preservation Act. And Interior's National Historic Preservation Act obligations after the rod had been executed were all governed by the programmatic agreement. Right. So in order to state a claim that Interior failed to comply with those obligations, what plaintiffs had to do here was allege taking their factual allegations as true, that Interior violated some provision of the programmatic agreement. And their main submission, as I understand it, was that you during this process said you were going to do a study of the cultural property but actually didn't. So, Your Honor, our response to that is that that requirement for a landscape study is not in the programmatic agreement. The programmatic agreement lays out the process by which BLM would identify cultural properties, would prepare an inventory report, the ZER 100-202, would prepare an inventory report, would provide it to plaintiffs to give plaintiffs and other consulting members the opportunity to comment on that inventory report and explain whether or not there were properties that were missing from that inventory report. And plaintiffs all agree with that and allege those same things at ER 66-67 in their complaint. But plaintiffs' problem is that they allege that BLM provided them with this inventory report and that they had the opportunity to comment on this inventory report, but then they never raised the- This is nothing about- I'm sorry, go ahead. But wasn't their allegations, and because we have the PI record, I mean, I think it's supported by the facts, but let's put that aside. Weren't at least the allegations were per the ROD and the PA there was going to be a second one and that the deal was that this wasn't going to start, the construction wasn't going to start or be approved until we got the second one. And when we looked at the second one, then we could decide where we needed to go from there and they never got the second one. And I think the issue with that is that that requirement isn't actually in the ROD. Well, that's a merits question, isn't it? I mean, the district court primarily is saying this all came too late because they're challenging that old, you know, 20-decade-ago ROD. But that isn't even pertinent to what's actually being claimed here. The terms of the PA are pertinent as to the claim that we agree is not barred by the statute of limitations because BLM's ongoing post-ROD and HPA compliance was governed by the terms of the programmatic agreement. So the only disagreement now is whether they brought that claim or some other claim? I think that's right. The disagreement, the fundamental way that this court can resolve this case is by looking at the complaint and seeing whether or not plaintiffs have stated a claim with their factual allegations taken as true that BLM violated a term. Well, if that's the only disagreement, then why wouldn't the district court have had to allow an amendment to clarify or sort out between things that are and are not permissible to be claimed at this time? I mean, the district court seemed to think that what happened at the preliminary injunction stage was relevant and it said everything came too late because they're challenging something that they're not actually challenging. So wouldn't the solution under your scenario be to return it to the court for a permission to amend? Your Honor, I think that would be appropriate. I think part of the confusion here was that plaintiffs' formulation of their claim and their arguments have shifted considerably throughout this process. So in their complaint at ER 94, they do ask the district court to vacate the underlying right-of-way and record of decision, the right-of-way authorization. But they've kind of pivoted at this point. But that was an or. It wasn't the only thing they were asking for. Fair enough, Your Honor. And I think to the extent that this court feels that their complaint could be supplemented with additional facts, it could enter a limited remand with leave to amend for plaintiffs. Well, I mean, Counsel, we could do a number of things. If we agree with the plaintiffs, we could find that the complaint is, in fact, sufficient, but that there may be things in the complaint that are inconsistent with the concession that they, for example, made through their briefing to us. And then it might make sense after it's gone back, if that's the way we decided to do, for them to make it clear that what they told us is the way they're proceeding. Yes, Your Honor. I think that would be appropriate. Counsel, just to be clear, and I think this goes a little bit to what Judge Graber was saying, the government, does the government agree that the standard the district court talked about in footnote nine of its order at E.R. 7 is an inappropriate standard for a motion to dismiss? One moment, Your Honor. Let me refine that. Sorry, E.R. 7. In the footnote. Yes, Your Honor. We agree that the district court should not have relied on any documents from the preliminary injunction record in making its motion to dismiss. Our position is that here on appeal, this court is doing de novo review. Plaintiffs agree that the rod and the programmatic agreement are incorporated into their complaint. But a great deal of your argument in your briefs is insisting that they didn't, in fact, contest, or they didn't actually present this landscape TCP at any point. Yes. But that all depends on the declarations that we're not supposed to be looking at. Your Honor, I think the well-pleaded factual allegations at E.R. 66 to 67 show that BLM provided plaintiffs with the inventory report. Plaintiffs had the opportunity to look at it. The inventory report did not mention that the San Pedro Valley was a TCP, but they do not allege that they told BLM at that point that the San Pedro Valley was a TCP. They don't allege they didn't either, but you keep saying that they didn't, right? No, that's fair enough, Your Honor, and to the extent that the panel feels that they could supplement their allegations on remand. Well, we do have the benefit, whether they're relevant or not to our decisions, we do have the benefit of the actual letters since they're in the record. That's true, Your Honor. And the declarations. Yes, they're in the record. But they don't claim what they said. Yes, they're in the record, and certainly the motion to dismiss stage, the court shouldn't consider those documents, but they do show BLM's ongoing compliance with its obligations under the programmatic agreement here. Aside from whether there are declarations, whether we consider them or not, they're merits documents. They don't really deal with the only issue before us now, which is the limitations period. That's correct, Your Honor. I would say I don't think the limitations period is really contested here. Well, I mean the period. I mean whether there was a second final judgment and whether they were within the limitations period. Your only argument, as I understand it, is they filed too late. That's your argument. Our argument is. Or there wasn't a final judgment as to what they did file. Yes, our argument is that they filed too late as to the claim that they lay out in their complaint, where they say that their injury, when they talk about their injury at ER 90 to 91, their injury is all about any construction proceeding through the San Pedro Valley. And the record of decision shows that BLM made the final decision as to the route at ER 137, at ER 125. But there is that language in the PA which says they could reconsider the route. That's correct, Your Honor. I do think that plaintiff's argument that the total route could be reconsidered is contradicted by the text of the record of decision at ER 155. There, the record of decision certainly agrees that there's this continued NHPA process and there could be continued mitigation and identification of historic properties. But it says that that identification and mitigation of historic properties would occur, quote, in the selected route and, quote, in the corridor. So that really goes to show that BLM wasn't considering going all the way back to their initial decision, looking at which alternative was the correct one. Except in another place, I don't have the page number in my head, there was a statement that the corridor could be altered as well. So when it says in the corridor, it doesn't necessarily mean this corridor, if there's also permission to alter where the corridor itself exists. I think since it says in the selected route, I think it would have to be in the selected route that the ROD selected. And one of the reasons that the ROD selected that route, which BLM explains at ER 150, is that it was the route that would have the least impact on cultural and historic resources. The NHPA process didn't begin in 2015. Rather, it had been ongoing for years beforehand. BLM, as it explains at ER 166 to 67 in the ROD, consulted with tribes before it selected the route. It conducted Class 1 surveys where it looked at existing information in order to determine where historic properties had previously been identified. It conducted Class 2 surveys where it went out to representative sites to determine whether there were cultural resources out there. And all of this is about the merits, though, ultimately. All of this is, yes, it's about the merits, but it's information in the record of decision that this court can consider at the motion to dismiss stage. But what it goes to show is that the selection of the route occurred with the benefit of significant NHPA compliance already there. But not with the promised future process that was also in the PA. Not with the future process in the PA. But the route selection had occurred with significant NHPA compliance. If plaintiffs had a problem with the route, they certainly could have challenged it in 2015. BLM is not trying to make any action unreviewable here. We agree that our NHPA compliance can be challenged. The final route selection can be challenged. The issue is that the route selection had to be challenged in 2015. And the issue is that in order to challenge BLM's post-rod compliance with the NHPA, plaintiffs would have had to point to some way that the BLM actually violated a term of the programmatic agreement. I'm sorry, I didn't hear that. Yes, but that second is a merits issue. So I don't see, so your basic underlying, your basic point is that the complaint doesn't sufficiently allege noncompliance with the PA's process. Yes, Your Honor. And you would, do you agree that the decision, the construction decision was a final judgment that could be challenged? A final agency action? A final agency action. BLM's position is that the LNTPs were not final agency action.  From what you just said, they would have to be. Because they didn't consummate the decision-making process for purposes of NHPA compliance. Well, what did then? I am not authorized to offer a particular legal avenue that plaintiffs could use to challenge. I'm not asking you that. I'm asking that we agree that there was a process that was going on and at some point it had to end. When was it going to end? Certainly the process ended at that point, but the programmatic agreement is what set BLM's NHPA obligations. But before the plaintiffs got the amended and the initial notice to proceed, there had not been any decision that we are now moving forward with construction. That's correct, Your Honor. And these limited notices to proceed basically told the plaintiffs, we've listened to you, but as of right now, we are not stopping any construction. That's correct, Your Honor. They said that the NHPA process had been complete at that point and that the requirements in the PA were satisfied. And 2023, for those things that I mentioned in my questions, 2023, that was the first time they ever heard that. Yes, that's correct. For this project segment as to the San Pedro Valley, the first time construction was authorized. Unless the Court has any further questions. All right, thank you. Thank you, Your Honor. Please. May it please the Court, Sven Brandt Erickson for SUNSIA transmission with me in the courtroom, my co-counsel Hillary Tompkins, and also our co-counsel from the District Court, Brian Imbranoni, and also representatives of the client. The issue before this Court is not whether or not there could be an amendment to the complaint to assert some kind of PA compliance claim. The plaintiffs have been clear throughout this process that their objective is an NHPA process with the outcome of that process being an alternative route. But they're not clear now. They say that's not what they're asking for necessarily. I think if you ask them if they want the alternative. Well, they may want it, but they also, as a general, excuse me, sir. I'm sorry. As a general matter, the remedy available on a complaint is essentially what the complaint would establish. Their plea for relief is general enough that it would encompass other relief, right? The reason they have pursued this case is because they want consideration of alternative route. But, counsel, I'm looking, for example, at the last page of the complaint, the first paragraph, paragraph two. What they're asking for, declare unlawful vacate and set aside the September 27th and November 27th LNTPs. And the underlying right of way. Well, I understand that. Or and even and, but so what? But regardless of that, which I think they've addressed during argument, the first part, if you think that that relief is barred by the statute, tell us why. Especially given your friends candid answers to our questions that the first time that the things that were said in the limited notices to proceed in 2023, that was the first time that they were decisions and were stated. And I really am having some real semantic trouble understanding how they could challenge them before they happened. So before I get to the P.A., I want to step back to the process that has not been discussed here at all that occurred. Could you speak into the mic, please? Yes. That occurred between 2009 and 2015, which was an NHPA process that actually produced the P.A. and the rod. In that process, the BLM reached out to 29 tribes, made contact with 29 tribes to evaluate their interest. They consulted in detail with 11 tribes, including the plaintiff tribes. And they did surveys. They identified they did large-scale surveys to identify kind of the overall scope. Counsel, all of that is interesting background, but it has nothing to do with their current claim. Their current claim is that the rod and the P.A. contemplated a specific future process that had not happened yet, and now it's happened. And they don't believe that that process was engaged in correctly. So all that background is interesting, but it may go to the merits. But I don't see how it goes to the viability of their claim. It goes directly to what is available through that P.A. process. Well, that's a merits question. Well, actually, it relates to whether or not the district court was correct in ruling that their claim is not available as a matter of law under the P.A. Because it's untimely. Not only because it's untimely, but because the relief they requested, which was consideration of an alternative route, an NHPA process that has an alternative route on the table. The next paragraph to the complaint, to the relief section of the complaint, says enjoined defendants from authorizing construction activities in the San Pedro Valley pending the completion of a legally adequate Section 106 process that in consultation with the affected tribes and nations identifies all historic properties, including traditional cultural properties in the San Pedro Valley, etc. Why isn't that relief available? So the identification of – so if you look at the complaint, according to the plaintiffs, they actually identified the cultural resource significance of the San Pedro Valley between 2009 and 2012, and that was considered in the route selection process. If you look at the ROD at 150, it indicates that BLM made a route decision after considering alternative routes and concluded that this route had the least cultural resource. So your view is, as a matter of law, notwithstanding the fact that the ROD and the P.A. said, this is all open to discussion, we want to consult with you, we're going to take into account what you say, we're going to give you another inventory, notwithstanding that both of these documents say all that, in order to make the claim they're making now timely, they had to sue whatever, 10 years ago or eight years ago, whatever the statute is, because they had to assume that the consultation process that was promised was going to be a total loser for them. The process – this whole process that BLM undertook under the NHPA is in support of its decision on a right-of-way, and that right-of-way decision was made in 2015. And their challenge to NHPA compliance is a challenge to BLM's right-of-way decision. And that's why it's time-barred and why it's not available under the P.A. All right, counsel, you know, your time's up, but we've taken up a lot of time with our questions. Do you have any other points you'd like to make? I just wanted to point out one thing, which is in the P.A., that the P.A., by its own, by the clear language of the document, it is clearly written to guide investigation of a defined corridor along a specific route. If you look at ER 99, it explains the area of potential effects that they will be evaluating, includes an extra 100 feet on each side so that they can evaluate conditions within this particular area and, if necessary, adjust, realign, move within that corridor plus 100 feet to avoid particular resources. Why is that our problem at this point when the only issue is the timeliness issue? If the argument that's being made is, oh, well, so you can interpret the P.A. to allow realignment of this project to avoid impacts on cultural resources. We also agree that we don't have to worry about that now. I'm sorry? We also agree that we don't have to worry now about whether realignment and repositioning are the same thing or something different because their complaint now is about the process that led to this final or, arguably, they say allegedly final construction order. So the reason that it's still very relevant is, in fact, that ultimately the complaint that they've made is that they want to have on the table some consideration of realignment of the project. I just read you this whole prayer for relief that says what we want was for them to do what they said they were going to do, which was consider everything they were supposed to consider. And the purpose that they made clear in all their communications… That isn't the question. The purpose is what cause of action are they alleging now and what are they seeking now? Right. So as a final note, I would indicate, just to tell you the status of this project, Your Honor, construction in the San Pedro Valley, the towers are all up, the wires are all strung. There's one short jumper cable that remains to be completed. Well, I mean, they appealed the P.I. and they dismissed the appeal. Correct. So there's no injunction pending. Right. So the range of alternatives available essentially is, you know, mitigation of potential effects. Are you arguing mootness now? What? Are you arguing mootness now? No one's arguing that. No. No, just telling you the status of the project. Well, if we were to choose to reverse, I mean, I think the issue that you were just talking about is an issue for the district court. Yes. All right. Thank you, counsel. All right. Thank you, Your Honor. And you have some time left for rebuttal. Thank you, Your Honor. I just wanted to make a few quick points. This case is not just about that second study, and I know this is a merits question, but I just did want to clarify that the P.A. does require the Bureau of Land Management to ID historic properties according to National Bulletin 38, which involves the identification of cultural landscapes and does state that the best way to do that is through a survey. And as Your Honors kind of pointed out, the argument about the inventory and whether plaintiffs commented on it, which, in fact, they did, requesting the study and informing BLM that their inventory was inadequate unless and until they did this survey, it's a red herring. The question at this stage is whether plaintiffs sufficiently alleged the general factual allegations that support their claims, and there can be no doubt that they did. Counsel, I know your friend on the other side just said that he did not think the case is moot. What is your view on that question? Your Honor, so the defendants have not argued that this case is moot, but even if they did, the relevant question is whether there is any effective relief. And this Court has held, for example, in Tyler v. Cuomo, which is at 236 F. 3rd at 1137, that it's inappropriate to prejudge the result of the NHPA process by concluding that no relief is possible, even where the project is ostensibly complete. So changes can still be made, whether it's mitigation, minimization, to alleviate the adverse effects of the project. But regardless, that issue is not before us. That is correct, Your Honor. No one at this point has made that argument. I also wanted to clarify that this Court has held before that a final decision that affects an earlier decision under a distinct statute is not barred. For example, in Jones, which was cited in our briefs, this Court held that a NHPA challenge to a Marine Mammal Protection Act permit was timely, even though a challenge to the underlying permit was time-barred, because independent statutes can both provide a cause of action to challenge the decision. What defendants are arguing really is a question of claim versus remedy. We, as Your Honors pointed out, made general allegations and requested a remedy for a lawful consultation process. But at this point, the only issue is whether our claims, our factual allegations, are sufficient to support our claims. Additionally, I wanted to point out the irony here. Counsel for BLM said that they're not trying to block plaintiffs from court, but then they also can't tell plaintiffs what the final agency action is. And I think that that really just highlights the fact that this case boils down to a question of fundamental fairness. Again, BLM specifically designed this deferred consultation process to conclude after the rod, but before construction. But then when that process became inconvenient, BLM simply ignored it and instead wielded the statute of limitations as a sword to vanquish plaintiffs' claims the moment they became justiciable. This heads-I-win, tails-you-lose gamesmanship, which is all too familiar to the tribes, cannot be allowed to stand. For, as the Supreme Court has often repeated, if men must turn square corners when dealing with the government, it cannot be too much to expect that the government return the courtesy, particularly to the tribes that it owes fiduciary obligations. And if the court has no further questions? All right. We thank counsel for their arguments. The case just argued is submitted. And with that, we are adjourned for today.
judges: GRABER, BERZON, BENNETT